REED SMITH LLP
Andrea J. Pincus
Oliver Beiersdorf
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: apincus@reedsmith.com
*Attorney for Plaintiffs Kawasaki
Kisen Kaisha, Ltd &
Catalina Shipping SA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV 4138

| | |
|---|---|
| KAWASAKI KISEN KAISHA, LTD and CATALINA SHIPPING SA, as owner of the M/V BREMEN BRIDGE (IMO No. 9367188),<br><br>    Plaintiffs,<br><br>-against-<br><br>OW BUNKER MIDDLE EAST DMCC, OW BUNKER NORTH AMERICA, INC., ING BANK, NV, HARLEY MARINE NY, INC., and PAUL DAVID COPLEY, IAN DAVID GREEN AND ANTHONY VICTOR LOMAS IN THEIR CAPACITIES AS JOINT RECEIVERS OF THE SECURITY ASSETS,<br><br>    Defendants. | 14 Civ. _____<br><br> |

## COMPLAINT FOR INTERPLEADER

Plaintiffs Kawasaki Kisen Kaisha, Ltd ("K-Line"), as charterer of the merchant vessel Bremen Bridge (IMO No. 9367188) (the "Vessel"), and Catalina Shipping SA ("Catalina"), as owner of the Vessel, by and through undersigned counsel, file this Complaint for Interpleader pursuant to Rule 9(h) of the Fed. R. Civ. Pro. and 28 U.S.C. §§ 1335 and 2361, and in support thereof, respectfully alleges as follows:

560487433

### A. NATURE OF ACTION

1. This is an action for interpleader to resolve competing claims by OW Bunker Middle East DMCC. ("OWBME"), OW Bunker North America, Inc. ("OWNA") (collectively "Debtors"); Harley Marine NY, Inc. ("Harley"); ING Bank NV ("ING"); Paul David Copley, Ian David Green and Anthony Victor Lomas in their capacities as joint receivers of the Security Assets as defined in that certain Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank NV (as Security Agent); and/or other third parties yet to be identified, to amounts owed in connection with the sale and delivery of bunker fuel to the Vessel in the Port of New York on October 12, 2014.

2. K-Line is faced with competing claims for payment of the $1,043,409.84 owed for the sale and delivery of bunker fuel to the Vessel (the "Disputed Funds") and the imminent threat of vessel arrest in the United States on or about June 1, 2015.

3. OWBME has invoiced K-Line for the Disputed Funds pursuant to K-Line's agreement to purchase bunker fuel from OWBME. In the Sales Order Confirmation for the fuel bunker delivery to the Vessel, OWBME designated OWBNA as the supplier of the fuel to the Vessel. OWBNA, as the putative physical supplier of the bunkers to the Vessel at the direction of OWBME may also assert a maritime lien claim for payment for the bunkers. ING, however, has asserted that it has a senior right to all funds which may be paid by customers of the Debtors as receivables subject to a certain financing by ING of the Debtors' insolvent Danish parent company. Further, in OWBNA's own bankruptcy proceedings pending in District of Connecticut, OWBNA has contested ING's liens against assets of OWBNA and ING's purported assignment of receivables by OWBNA and other OWB entities.

4. Several partners or employees of PWC in London, Paul David Copley, Ian David Green and Anthony Victor Lomas, have sent communications to K-Line purporting to act as "joint receivers" appointed by ING (as the allegedly secured party under certain financing agreements with OW Bunker entities), to collect and realize value from secured assets, with such receivers ("Joint Receivers" as further defined below) alleging to act as agent for the OW Bunker subsidiaries. The Joint Receivers have in turn recently threatened to arrest the Vessel upon its arrival at a port in the New York area in connection with the unpaid fuel bunkers. In addition, Harley has threatened to arrest the Vessel, claiming that it has a maritime lien against the Vessel for barge services in connection with delivering bunkers to the Vessel which services remain unpaid.

5. The Vessel is imminently due to arrive at the Port of New York, expected on June 1, 2014.

6. Plaintiffs are faced with uncertainty as to the proper recipient of the Disputed Funds. Prior to and in lieu of making any payment to one or more parties, K-Line wishes to deposit into this Court the Disputed Funds sufficient to satisfy the conflicting claims *in rem* and *in personam* and, *inter alia*, obtain a declaration that the deposit of such funds will discharge Plaintiffs' obligations with respect to the payment of the fuel bunkers, and that such parties as may assert conflicting claims may pursue their claims against the deposited Disputed Funds, which shall also serve as the substitute *res* for any *in rem* action such parties may seek to commence, and further that upon deposit of the Disputed Funds with this Court such parties shall be enjoined from the threatened or actual arrest of the Vessel or other action against Plaintiffs.

B.   **PARTIES**

7.   Plaintiff K-Line is a foreign corporation organized and existing under the laws of Japan with an office located at Iino Building, 1-1 Uchisaiwaicho 2-chome, 100-8540 Tokyo, Japan.

8.   Plaintiff Catalina is a party in interest in this proceeding as it is the owner of the Vessel. Catalina is a foreign corporation organized and existing under the law of Panama with an office located 20 Frederico Boyd Ave & 51st St, Panama City, Panama.

9.   The Vessel is a party in interest in this proceeding as it is the potential subject of one or more lien claims against it *in rem*. The Vessel is a Panamanian-flagged vessel owned by Catalina.

10.   Defendant OWBME is a corporation organized and existing under the laws of the UAE, with an office located at Indigo Tower, Office #709-710 Jumeirah Lake Towers P.O Box 486052 Dubai, UAE.

11.   Defendant OWBNA is a corporation or business entity organized and existing pursuant to the laws of Connecticut, with an office and place of business at 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

12.   Defendant Harley is a corporation or business entity organized and existing pursuant to the laws of a state of the United States, with an office at 63 Flushing Ave. #328 Circle Line Brooklyn Navy Yard, Brooklyn, NY 11205.

13.   Defendant ING is a bank organized and existing pursuant to the laws of the Netherlands with an office and place of business located at Bijlmerplein, 1102 MG Amsterdam, The Netherlands.

14.   Defendant Paul David Copley is a partner or employee of PricewaterhouseCoopers LLP, with offices at 7 More London Riverside, London, SE1 2RT

United Kingdom, acting in his capacity as one of three Joint Receivers of the Security Assets as defined in that certain Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank NV (as Security Agent).

15. Defendant Ian David Green is a partner or employee of PricewaterhouseCoopers LLP, with offices at 7 More London Riverside, London, SE1 2RT United Kingdom, acting in his capacity as one of three Joint Receivers of the Security Assets as defined in that certain Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank NV (as Security Agent).

16. Defendant Anthony Victor Lomas is a partner or employee of PricewaterhouseCoopers LLP, with offices at 7 More London Riverside, London, SE1 2RT United Kingdom, acting in his capacity as a joint receiver of the Security Assets as defined in that certain Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank NV (as Security Agent).

### C.   JURISDICTION AND VENUE

17. The preceding paragraphs are incorporated by reference as if fully set forth herein.

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 and Fed. R. Civ. Pro. 9(h) inasmuch as it involves the interpleader of funds in the possession of Plaintiff K-Line for the payment of bunker fuel delivered to the Vessel.

19. This Court has jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335(a) in that for the bunker payment in question: (a) at least two of the claimants are of diverse citizenship; (b) the dispute between the claimants involves funds in an amount exceeding $500; and (c) Plaintiff, as charterer of the Vessel, is the stakeholder of the funds but without

interest in the funds and, concurrently with the filing of this Complaint, will seek to deposit the Disputed Funds in the Court's registry.

20. This Court has personal jurisdiction over the Debtors pursuant to the terms of the applicable bunker supply contract and O.W. Group Standard Terms and Conditions.

21. This Court has personal jurisdiction over Harley because Harley maintains operations and an office in the state of New York.

22. This Court has personal jurisdiction over ING to the extent it may be a third-party beneficiary of the bunker supply contract at-issue in this dispute and to the extent that it is an alleged assignee of the receivables of the Debtors. Additionally, ING transacts business within the jurisdiction of this Court.

23. The Court has jurisdiction over the Joint Receivers to the extent the Joint Receivers may be third-party beneficiaries of the bunker supply contract at-issue in this dispute and to the extent that they represent as agent an alleged assignee of the receivables of the Debtors. Further, The Joint Receivers seek to recover as "Security Assets" receivables arising from the delivery of fuel bunkers in the Port of New York in the United States, which delivery was made pursuant to an agreement for the delivery of the fuel bunkers in New York. Further, the Joint Receivers purport to act as agent for OW Bunker subsidiaries, all of which have mandated that this type of dispute be litigated before this Court pursuant to the terms of the applicable bunker supply contract and O.W. Group Standard Terms and Conditions. Additionally, PWC and its partners and employees transact business within the jurisdiction of this Court.

24. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1397.

### D.     BACKGROUND

25.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

26.     Plaintiff K-Line chartered the Vessel from Plaintiff Catalina, subject to a charterparty agreement, for the transportation and delivery of containerized cargo.

27.     In October, 2014 K-Line sought to purchase bunker fuel ("bunkers") from OWBME and, on October 6, 2014, OWBME acknowledged receipt of an order from K-Line for the purchase of bunkers to be loaded onboard and consumed by the Vessel. The bunkers were to be supplied to the Vessel in New York. A true and correct copy of the sales order confirmation is attached hereto as Exhibit A.

28.     From October 12 -19, 2014, OWBNA supplied bunkers to the Vessel at the direction of OWBME while the Vessel was in the Port of New York. A true and correct copy of the Bunker deliver receipt is attached hereto as Exhibit B.

29.     OWBME issued an invoice, dated October 12, 2014, seeking payment from K-Line for the provision of the bunkers totaling $1,043,409.84. A true and correct copy of the invoice for the cost of fuel is attached hereto as Exhibit C.

30.     The standard terms and conditions of all OW Bunker entities for the sale of bunkers includes clause P.5.: "Without prejudice to any other Clause herein any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them, any dispute and/or claim arisen in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the Southern District of New York." A true and correct copy of OWB's standard terms and conditions is attached as Exhibit D.

31. ING sent two letters to K-Line, dated November 7 and November 13, 2014. True and correct copies of the letters are attached hereto as <u>Exhibit E</u>.

32. In the letters, ING demanded that K-Line make certain payments to ING pursuant to an "English Omnibus Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank N.V. as Security Agent" (the "<u>2013 Security Agreement</u>") under which the Debtors allegedly assigned certain rights in respect of their supply contracts as security to ING.

33. On November 13, 2014, Debtor OWBNA filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Connecticut (the "<u>Bankruptcy Court</u>").

34. On November 18, 2014, at the hearing before the Bankruptcy Court on the "first day" motions filed with the Court on behalf of the Debtors, the Bankruptcy Court agreed that the three related cases of OW Bunker entities ("US OWB Debtors") incorporated in the United States cases should be administratively consolidated.

35. On November 25, 2014, the US OWB Debtors commenced an adversary proceeding against ING seeking, among other things, to avoid certain liens conveyed to ING under the 2013 Security Agreement (Adv. Pro. No. 14-05063). The US OWB Debtors assert, *inter alia*, that ING failed to perfect timely its liens against any assets of the US OW Bunker entities and that its filing of UCC statements within days or weeks of the US bankruptcy filings rendered the liens avoidable preferential transfers.

36. The adversary proceeding against ING remains pending before the Bankruptcy Court and ING's rights, if any, to the payments due to the Debtors from their customers has not yet been resolved.

37. Harley wrote two letters, dated January 7 and March 24, 2015, in which Harley claimed to have a maritime lien against the Vessel stemming from the barge services it performed in October of 2014 in delivering bunker fuel to the Vessel. Although Harley appears to have contracted with OWBNA for the provision of barge services, based on the fact that its invoice for such services is for the account of OWBNA, Harley maintains that it has the right to arrest the Vessel to secure payment of its invoice, totaling $11,725.00. True and correct copies of the Harley Letters and Invoice are attached as Exhibit F.

38. On May 28, 2015, Paul David Copley, Ian David Green, and Anthony Victor Lomas, of PWC in the United Kingdom, identifying themselves as joint receivers of the Security Assets and agents and acting in that capacity, sent an email to K-Line, advising "that the Joint Receivers are currently reviewing the status of your vessel 'Bremen Bridge' with a view to making an immediate arrest and note that the vessel is now on course to New York." Further, the email admonished K-Line "to make immediate payment of the outstanding invoice amount, to avoid the unnecessary costs and inconvenience which will otherwise be incurred." A true and correct copy of the PWC email is attached hereto as Exhibit G.

39. The Vessel is *en route* now to the United States, and is expected to reach the Port of New York on or about June 1, 2015. The Vessel could face arrest pursuant to Supplemental Admiralty Rule C by any of the Defendants claiming to assert a maritime lien, which could cause harm to Plaintiffs, the Vessel, delay the Vessel, affect innocent third parties with interests in the Vessel's cargo and generally inhibit maritime commerce.[1]

---

[1] Plaintiffs make no assertion nor takes a position as to the validity of any of the potentially asserted maritime liens or other claims by any of the Defendants or whether the Debtors have validly assigned any maritime lien claims to ING. This issue is a matter to be decided by this Court or another court having jurisdiction over the underlying claims by and between the claimants.

40.  Due to the bankruptcy filings of the Debtors, it is possible that one of the Defendants, or another party, will take immediate action to collect the Disputed Funds, and do so in different courts, multiplying the risk of inconsistent determinations and K-Line's litigation costs as well as the risk of exposure to K-Line, Catalina, and the Vessel, while potentially permitting a windfall for one party at the expense of the others.

E.  **POSSIBLE ARREST OF VESSEL AND NECESSITY OF INTERPLEADER**

41.  Under United States maritime law, the contract supplier of necessaries, including fuel, to a vessel obtains a maritime lien against the vessel. Under certain circumstances, a physical supplier may also assert a maritime lien on that vessel.

42.  Claimants may have already asserted, or may assert rights to amounts owed for the sale of necessaries to the Vessel, giving rise to a maritime lien under the Maritime Lien and Commercial Instruments Act, 46 U.S.C. § 31301 *et seq.*

43.  K-Line cannot ascertain whether the Disputed Funds should be paid to OWBME, ING, or, in part, to Harley, or to OWBNA in order to extinguish all maritime liens against the Vessel and to prevent its arrest.

44.  The Vessel is currently due to call at the Port of New York this Monday, June 1, 2015, and could face arrest by one or more of the Defendants claiming to assert a maritime lien, which could cause harm to Plaintiffs, delay the Vessel, and affect innocent third parties. The threat of such arrest by any of the Defendants will follow the Vessel from port to port, interrupting K-Line's business and creating economic and physical risks to the Vessel, the owner and K-Line, unless and until arrests of the Vessel are enjoined by a court of competent jurisdiction.

45.     Plaintiff K-Line presently has control over the Disputed Funds. K-Line disclaims any interest in the cost of the supply of fuel bunkers to the Vessel.

46.     The competing claims of the Defendants or other third parties may expose K-Line, the Vessel, and the Vessel owner to multiple liabilities in connection with the payment of the Disputed Funds in order to extinguish competing maritime lien claims and/or other *in personam* or non-maritime claims.

47.     Such liability may include not only the cost of posting security to free the Vessel from each arrest as may be pursued by parties asserting maritime liens, as well as the potential for multiple litigations over the same Disputed Funds in different jurisdictions, but the cost of delay to the Vessel for every day she sits idle in port subject to an arrest.

48.     K-Line may also suffer from the disruption of its business while the threat of arrest and attendant delays and associated risks continue unchecked. If K-Line is forced to move the Vessel and is removed from the berthing line-up at the loading location due to the arrest, K-Line could face significant delays in trying to obtain a berthing slot thereafter and could thus potentially incur substantial fees for the delays while in port. Moreover, K-Line could be held to pay penalties by cargo interests at the loading location as they may have to divert the contracted cargo due to delays resulting from the arrest.

49.     Finally, if an arrest is permitted to take place and the Vessel is not properly handled and maintained, the risks of physical damage to the Vessel are significant.

50.     Plaintiff K-Line is entitled to deposit with the Court the Disputed Funds representing the amount due for the bunkers and require that the Debtors, ING, Harley, and any other claimant interplead among themselves to establish their respective rights to the invoiced funds.

51.     Further, in order to comply with the requirements of Supplemental Admiralty Rule E(5)(a) and for the funds deposited into the registry to constitute security for the *in rem* claims of the claimants and to act as the substitute *res* against which all claimants must assert their maritime liens for the fuel bunkers, K-Line is prepared to deposit the full amount of the Disputed funds, plus an additional amount constituting 6% interest per annum, or such other amount as the Court deems just and proper. The amount is calculated to be $1,043,409.84 (the "Disputed Funds"), plus one year of interest at 6% on the Disputed Funds ($62,604.58), totaling $1,106,014.30.

52.     After depositing the Disputed Funds plus interest with this Court, K-Line is entitled to be discharged from further liability with respect to the Disputed Funds and liability for payment of the fuel bunkers. The Vessel is similarly entitled to be discharged from any maritime liens against it arising from the supply of the bunkers and free from any further threat of arrest by any and all parties asserting claims to payment from the Disputed Funds.

### F.    INTERPLEADER REQUIREMENTS

53.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

54.     The respective claims to the Disputed Funds by the Defendants are adverse and conflicting and are made without collusion. OWBNA may also assert a claim against the Plaintiffs and any such would also be similarly adverse and conflicting and made without collusion. Plaintiffs are unable to determine which, if any, of the claims are valid and/or in what amount(s).

55.     Plaintiff K-Line cannot pay the Disputed Funds to any party without this Court's determination of the respective interests in such Disputed Funds.

56. Because Plaintiff K-Line lacks knowledge or information sufficient to determine the rights of any party to the Disputed Funds, K-Line contests the alleged rights of all parties asserting a claim to the Disputed Funds in its possession. Due to the amount at issue, which is in excess of $500, K-Line is willing to place the Disputed Funds, together with 6% interest, into the Court's registry, preserving the Disputed Funds and reserving all rights and claims thereto, pending a determination by this Court of the respective rights to such Disputed Funds.

57. Plaintiffs have no interest as a claimant in the Disputed Funds.

### G.   CONCLUSION AND PRAYER

BASED UPON THE FOREGOING, Plaintiffs respectfully requests that the Court enter an order:

(1) directing the deposit of the Disputed Funds into this Court's registry to serve as both substitute *res* with respect to maritime liens which may be asserted against the Vessel as well as funds against which claimants may assert their respective competing claims;

(2) determining which of the Defendants is entitled to the Disputed Funds, or, in the alternative, the share of each defendant, if any;

(3) upon K-Line's deposit of $1,106,014.30 in this Court's registry, enjoining the Debtors, ING, Harley and the Joint Receivers any other entity acting by or on behalf of any of the Defendants or on its own behalf from pursuing or commencing any action against Plaintiff K-Line or the Vessel *in rem*, including but not limited to the arrest of the Vessel in any port, pursuant to Supplemental Admiralty Rule C based on the assertion of any *in rem* claim for the delivery of the fuel bunkers described herein;

(4) upon K-Line deposit of $1,106,014.30 in this Court's registry, discharging Plaintiff K-Line from any liability on any claim that has been made or may be made in the future for the delivery of the bunkers;

(5) upon K-Line deposit of $1,106,014.30 in this Court's registry, discharging the Vessel from any liability on any claim that has been made or may be made in the future for delivery of the fuel bunkers;

(6) awarding Plaintiffs costs and attorneys' fees in this action; and

(7) awarding Plaintiffs such other and further relief as this Court deems just and proper.

Dated: May 29, 2015
      New York, NY

**REED SMITH LLP**

By: */s/ Andrea Pincus*
Andrea J. Pincus
Oliver Beiersdorf
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: apincus@reedsmith.com
*Attorney for Plaintiffs Kawasaki Kisen Kaisha Ltd. & Catalina Shipping SA.*