REED SMITH LLP
Andrea J. Pincus
Oliver Beiersdorf
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450
Email:  apincus@reedsmith.com
*Attorneys for Plaintiffs Kawasaki Kisen Kaisha, Ltd and*
*Catalina Shipping SA*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAWASAKI KISEN KAISHA, LTD and CATALINA SHIPPING SA, as owner of the M/V BREMEN BRIDGE (IMO No. 9367188),<br><br>        Plaintiffs,<br><br>                    -against-<br><br>OW BUNKER MIDDLE EAST DMCC, OW BUNKER NORTH AMERICA, INC., ING BANK, NV, HARLEY MARINE NY, INC., and PAUL DAVID COPLEY, IAN DAVID GREEN AND ANTHONY VICTOR LOMAS IN THEIR CAPACITIES AS JOINT RECEIVERS OF THE SECURITY ASSETS,<br><br>        Defendants. | 15-CV-4138 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR**
**RESTRAINING ORDER AND DEPOSIT ORDER PURSUANT TO 28 U.S.C. § 2361**

Plaintiffs Kawasaki Kisen Kaisha, Ltd ("K-Line"), as charterer of the merchant vessel Bremen Bridge (IMO No. 9367188) (the "Vessel"), and Catalina Shipping SA ("Catalina"), as owner of the Vessel, by and through undersigned counsel, file this Application for Restraining Order Pursuant to 28 U.S.C. § 2361 of the Federal Interpleader Act and posting security pursuant to Rule E(5)(a) of the Supplemental Rules for Admiralty and Maritime Claims.

560487964

A.     **PRELIMINARY STATEMENT**

Plaintiff K-Line is faced with competing claims for payment of $1,043,409.84 owed for the supply of bunker fuel to the Vessel in October, 2014 while in the Port of New York, NJ (the "Disputed Funds").  In connection with these claims, Plaintiff K-Line faces the imminent threat of vessel arrest when the Vessel arrives in the United States on or about June 1, 2015.

Plaintiff K-Line contracted for the supply of bunker fuel from OW Bunker Middle East DMCC ("OWBME"), which instructed OW Bunker North America, Inc ("OWBNA") to physically supply the bunker fuel to the Vessel.  OWBME issued an invoice to K-Line for payment for the bunkers in the amount of $1,043,409.84.  However, ING has asserted that it has a senior right to all funds which may be paid by customers of OWBME and OWBNA (the "Debtors") as receivables subject to a certain financing by ING of the Debtors' insolvent Danish parent company.  As such, ING has demanded that K-Line pay the same $1,043,409.84 to ING.  Yet another competing claim for the Disputed Funds has been asserted by Harley Marine NY, Inc. ("Harley"), which supplied the barge services to deliver bunker fuel to the Vessel.  K-Line is thus faced with uncertainty as to the proper recipient of the Disputed Funds.

Meanwhile, several partners or employees of PWC in London, Paul David Copley, Ian David Green and Anthony Victor Lomas, have sent communications to K-Line purporting to act as "joint receivers" appointed by ING (as the allegedly secured party under certain financing agreements with OW Bunker entities), to collect and realize value from secured assets, with such receivers ("Joint Receivers" as further defined below) alleging to act as agent for the OW Bunker subsidiaries. The Joint Receivers have in turn recently threatened to arrest the Vessel upon its arrival at a port in the New York area in connection with the unpaid fuel bunkers. Harley has also threatened to arrest the Vessel, which is *en route* to the United States and is due to arrive in the Port of New York on or before June 1, 2015.  An arrest of the Vessel by the Joint Receivers, ,

Harley, or any other party asserting maritime liens, will cause immediate harm to Plaintiffs, from the disruption of business, costs to post security to free the ship, as well as charges for every day the ship sits idle while such arrest is pending, plus the risk of concurrent litigation among different parties in different courts over payment for the same fuel and the related risk of inconsistent judgments.

Further, a determination of only one Defendant's rights to any or all of the Disputed Funds in a separate proceeding would fail to prevent other Defendants, or third parties, to assert maritime liens against the Vessel for the same Disputed Funds, exposing Plaintiffs to multiple exposure for the same fuel transaction whether such claims are asserted under maritime law or contract law.

Therefore, Plaintiffs request that the Court restrain and enjoin the Defendants from instituting or pursuing any proceedings in any court against the Vessel or Plaintiffs for the recovery of the Disputed Funds pending this Court's determination of both the pending interpleader action, and the respective rights of the Defendants to the Disputed Funds which Plaintiff K-Line has requested be deposited into this Court's registry as the *res* over which all of the Defendants can assert their claims.  More specifically, Plaintiff K-Line requests that funds in the amount of $1,106,014.30 be deposited (an amount which includes 6% interest on the underlying Disputed Funds) in conformity with Supplemental Admiralty Rule E and the requested Interpleader relief sought.

### B.    STATEMENT OF FACTS

Plaintiffs filed the Complaint for Interpleader to resolve competing claims to amounts owed pursuant to the sale and delivery of fuel bunkers to the Vessel in the Port of New York in October, 2014.  As set forth in its Complaint for Interpleader, filed herewith, K-Line is faced with uncertainty as to the proper recipient of funds owed pursuant to the invoices for the sale,

competing claims for the payment of such funds among the Defendants, and the threat of imminent arrest of the Vessel by both ING, as the alleged assignee of Debtors' claims for payment, and Harley, as the supplier of barge services that delivered the bunkers in question to the Vessel.

The Vessel that the Joint Receivers and Harley threaten to arrest is *en route* now to the Port of New York in the United States. Time is of the essence with respect to this application for relief as the Vessel is due to reach the New York area on or before Monday, June 1, 2015, and is expected to be arrested upon its arrival absent relief from this Court enjoining such arrest.

### 1. Debtors' Claims

As set forth in the Complaint, Plaintiff K-Line chartered the Vessel from Plaintiff Catalina, subject to a charterparty agreement, for the transportation and delivery of containerized cargo. In October, 2014 K-Line sought to purchase bunker fuel from OWBME and, on October 6, 2014, OWBME acknowledged receipt of an order from K-Line for the purchase of bunkers to be loaded onboard and consumed by the Vessel. In the Sales Order Confirmation for the fuel bunker delivery to the Vessel, OWBME designated OWBNA as the supplier of the fuel to the Vessel. *See* Compl. Ex. A. Between October 12-19, 2014, OWBNA supplied bunkers to the Vessel at the direction of OWBME while the Vessel was in the Port of New York. Compl. Ex. B. OWBNA, as the putative physical supplier of the bunkers to the Vessel at the direction of OWBME may also assert a maritime lien claim for payment for the bunkers. OWBNA also contracted with Harley to deliver the bunkers to the Vessel by barge. Compl. Ex. F. OWBME issued an invoice, dated October 12, 2014, seeking payment from K-Line for the provision of the bunkers totaling $1,043,409.84. Compl. Ex. C.

### 2. ING's Claim and the OWB Bankruptcy

ING sent two letters to K-Line, dated November 7 and November 13, 2014, in which ING demanded that K-Line make certain payments to ING pursuant to an "English Omnibus Security Agreement dated 19 December 2013 between O.W. Bunker & Trading A/S and certain of its subsidiaries (as Chargors) and ING Bank N.V. as Security Agent" (the "2013 Security Agreement") under which the Debtors allegedly assigned certain rights in respect of their supply contracts as security to ING. Compl. Ex. E.

At approximately the same time, on November 13, 2014, Debtor OWBNA filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"). At a hearing before the Bankruptcy Court on November 18, 2014—the "first day" motions filed with the Court on behalf of the Debtors—the Bankruptcy Court agreed that the three related cases of OW Bunker entities ("US OWB Debtors") incorporated in the United States cases should be administratively consolidated.

The US OWB Debtors commenced an adversary proceeding against ING on November 25, 2014, seeking, among other things, to avoid certain liens conveyed to ING under the 2013 Security Agreement (Adv. Pro. No. 14-05063). The US OWB Debtors have asserted, *inter alia*, that ING failed to perfect timely its liens against any assets of the US OW Bunker entities and that its filing of UCC statements within days or weeks of the US bankruptcy filings rendered the liens avoidable preferential transfers. The adversary proceeding against ING remains pending before the Bankruptcy Court and ING's rights, if any, to the payments due to the Debtors from their customers has not yet been resolved.

    3.    **Threats to Arrest the Vessel by Harley and the Joint Receivers**

Harley wrote two letters to K-Line, dated January 7 and March 24, 2015, in which Harley

claimed to have a maritime lien against the Vessel stemming from the barge services it provided in October of 2014 in delivering bunker fuel to the Vessel.  Although Harley appears to have contracted with OWBNA for the provision of barge services and not with Plaintiffs, based on the fact that its invoice for such services is for the account of OWBNA, Harley maintains that it has the right to arrest the Vessel to secure payment of its invoice, totaling $11,725.00.  *See* Compl. Ex. F.

On May 28, 2015, Paul David Copley, Ian David Green, and Anthony Victor Lomas, of PWC in the United Kingdom, identifying themselves as joint receivers of the Security Assets and agents and acting in that capacity, sent an email to K-Line, advising "that the Joint Receivers are currently reviewing the status of your vessel 'Bremen Bridge' with a view to making an immediate arrest and note that the vessel is now on course to New York." Further, the email admonished K-Line "to make immediate payment of the outstanding invoice amount, to avoid the unnecessary costs and inconvenience which will otherwise be incurred."  Comp. Ex. G.

The Vessel is now *en route* to the United States and is expected to reach the Port of New York on or about June 1, 2015.  The Vessel could face arrest pursuant to Supplemental Admiralty Rule C by any of the Defendants claiming to assert a maritime lien, which could cause harm to Plaintiffs, the Vessel, delay the Vessel, and affect innocent third parties with interests in the Vessel's cargo and generally inhibit maritime commerce.[1]  And, due to the bankruptcy filings of the Debtors, it is possible that one of the Defendants, or another party, will take immediate action to collect the Disputed Funds, and do so in different courts, multiplying the risk of

---

[1] Plaintiffs make no assertion nor takes a position as to the validity of any of the potentially asserted maritime liens or other claims by any of the Defendants or whether the Debtors have validly assigned any maritime lien claims to ING.  This issue is a matter to be decided by this Court or another court having jurisdiction over the underlying claims by and between the claimants.

inconsistent determinations and K-Line's litigation costs as well as the risk of exposure to K-Line, Catalina, and the Vessel, while potentially permitting a windfall for one party at the expense of the others.

### C.  POSSIBLE ARREST OF VESSEL AND NECESSITY OF INTERPLEADER

Under United States maritime law, the contract supplier of necessaries, including fuel, to a vessel obtains a maritime lien against that vessel. Under certain circumstances, a physical supplier may also assert a maritime lien on that vessel. As such, a number of claimants have already or may assert rights to amounts owed for the sale of necessaries to the Vessel, giving rise to a maritime lien under the Maritime Lien and Commercial Instruments Act, 46 U.S.C. § 31301 *et seq*.

Plaintiffs cannot ascertain whether the Disputed Funds should be paid to the Debtors, ING, Harley (in part), the Joint Receivers or another party to extinguish all maritime liens against the Vessel and to prevent its arrest in this District or elsewhere. Therefore, because the Vessel is due to call at the Port of New York on or before June 1, 2015, the Vessel could face arrest by one or more of the Defendants claiming to assert a maritime lien. This would cause harm to Plaintiffs, delay the Vessel, and negatively impact innocent third parties, such as the cargo interests.

### D.  RELIEF REQUESTED

Plaintiffs request that this Court enter a restraining order pursuant to 28 U.S.C. § 2361, directing that the Disputed Funds be deposited into the registry of this Court and, upon such deposit, restraining any claimants now or later known from instituting and prosecuting any proceeding against Plaintiff K-Line or Catalina *in personam* or against the Vessel *in rem*, including but not limited to the arrest of the Vessel pursuant to Supplemental Admiralty Rule C

in any United States District Court, based on the assertion of any claim related to the provision of bunkers described herein, and for such other and further relief as this Court deems just and equitable.

### E.     BASIS FOR RELIEF SOUGHT

#### 1.     The Requirements For Interpleader And Injunctive Relief Are Satisfied

An interpleader action protects a disinterested stakeholder from multiple claims to a limited fund by providing a forum and procedure to adjudicate all competing interests. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 534 (1967). Section 1335 expressly anticipates that interpleader is appropriate when a claimant "is claiming or may claim to be entitled to" funds at issue. Further, the Supreme Court has stated that the federal interpleader statute is remedial and to be liberally construed." *Id.* at 533.

Once the requirements of interpleader are satisfied, the Court may issue an injunction to enjoin the claimants from instituting prosecuting any state or federal proceeding involving the subject property. *Companion Life Insurance Co. v. Schaffer*, 442 F. Supp. 826 (S.D.N.Y. 1977). With respect to injunctions, the Federal Interpleader Act provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any Stale or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court....
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361.

The purpose of 28 U.S.C. § 2361 is to relieve the stakeholder from the burden of defending multiple and conflicting actions and to make it possible for the Court to distribute the funds payable by the plaintiff, by entering an order restraining claimants from instituting or

prosecuting proceedings in any state or federal court affecting the property involved in the interpleader. *See Orseck, P.A. v. Servicios Legates De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1351 (S.D. Fla. 2010). Injunctive relief will prevent a multiplicity of action and reduce the possibility of inconsistent determinations or the inequitable distribution of the funds. *U.S. v. Major Oil Corp.*, 583 F.2d 1152, 1158 (10th Cir. 1978). This injunctive power is nationwide and is intended to halt any proceeding deemed inconsistent with the interpleader action. *Id.*; *see also O'Daniel v. Porter*, 240 F.2d 636 (D.C. Cir. 1957) (enjoining garnishment and foreclosure actions).

District courts have "extensive discretion under Section 2361 with regard to the issuance and the scope of the Order." *Orseck*, 699 F. Supp. 2d at 1351; *see also Commerce & Indus. Ins. Co. v. Cablewave Ltd*, 412 F.Supp. 204, 206 (S.D.N.Y. 1976); 7 Wright and Miller, Federal Practice and Procedure § 1717. Accordingly, this Court may enjoin future arrests of the Vessel in any District Court and require the claimants to resolve their claims in this Court, a forum with jurisdiction where all proper parties are joined and the *res* is within the Court's jurisdiction. *See Holcomb v. Aetna Life Ins. Co.*, 228 F.2d 75 (10th Cir. 1955).

The injunction provided by 28 U S C § 2361 is excepted from the requirements of Rule 65(b) of the Federal Rules of Civil Procedure by Rule 65(e), which provides, in relevant part, "These rules do not modify 28 U S C § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader." Fed R Civ P 65(e). *See also Mitchum v. Foster*, 407 U.S. 225, 234 (1972); *United States v Sentinel Fire Ins. Co.*, 178 F 2d 217, 231 (5th Cir. 1949). Accordingly, this Court has the power to enjoin, without notice, other actions seeking a determination of the rights being contested. *Prudential Ins. Co. of Am. v. Shawver*, 208 F. Supp. 464, 471 (W.D. Mo. 1962); *Minnesota Life Ins. Co. v. Creasy*, No 14-11, 2014 WL 715556

(M.D. Ga. Feb. 24, 2014) (issuing restraining order without notice); *Aetna Cas. & Sur. Co v. Ahrens*, 414 F Supp 1235, 1242 (S.D. Tex. 1976) (issuing a restraining order without notice "to preserve the status quo" while considering the Court's interpleader jurisdiction and allowing for service of notice of the action after entry of injunction).

Further, many courts have permitted interpleader in the admiralty context. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 17.3d 550 (5th Cir, 2004) (Where two Rule B actions were commenced against freight owed, charterer filed action for interpleader, attachment actions were consolidated, and charterer was granted leave to deposit into court registry and was discharged from the lawsuit). *See also Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188 (9th Cir. 1962) (where libel in personam and libel in rem filed for stevedoring services); *Defense Plant Corporation v. United States Barge Lines*, 145 F.2d 766 (2d Cir. 1944).

The Defendants' right to assert a maritime lien will be fully preserved in an interpleader action as the lien claim can be asserted against the funds in the Court's registry. *See e.g. Starboard Venture Shipping, Inc. v. Cainomar Transp., Inc.*, 1994 A.M.C. 1320 (S.D.N.Y. 1993) (property already held in *custodia legis* can be attached) (citing *The Lottawanna*, 87 U.S. (20 Wall.) 201 (1873) and *Ravenna Tankers Pte. v. Omni Ships Pte. Ltd.*, 2014 A.M.C. 1190 (E.D. La. 2013) (held claimant's lien can attach to funds in the Court Registry as funds were substituted res for ship)). The funds on deposit in the registry of the Southern District of New York may be deemed security provided by Plaintiff K-Line, as charterer of the Vessel pursuant to Rule E of the Supplemental Rules for Admiralty and Maritime Claims, just as though the Joint Receivers, Harley, or another party had physically served the warrant of arrest on the Vessel in New York or arrested the Vessel in a jurisdiction outside the United States.

Where, as here, a stakeholder pleads Rule 9(h) and seeks to deposit security sufficient

under Rule E(5)(a) to secure the *in rem* claims of third parties in order to release a vessel or prevent its arrest, it may do so through 28 U.S.C. § 1335. By depositing the substitute *res* in an amount determined to be sufficient under Rule E(5)(a) the Plaintiff K-Line invokes the admiralty jurisdiction of the District Court. Courts sitting in admiralty have broad discretion to fashion equitable remedies. These rightfully include issuing orders enjoining arrest of a vessel anywhere in the world for a claim in which the owner has posted substitute security under Rule E(5)(a). As such, the power of the District Court may reach beyond the express language of 28 U.S.C. § 2361 when the Court has determined the substitute *res* under Rule E(5)(a) has been deposited in the court registry. Plaintiff K-Line seeks to deposit such amount in this case in order to prevent the arrest of the Vessel by Defendants anywhere in the world on a claim for the delivery of fuel bunkers.

      Plaintiff K-Line and the Vessel are faced with an actual threat of litigation consisting of the risk of the arrest of the Vessel at any port in the United States or elsewhere by any of the claimants to the Disputed Funds, together with a specific threat to arrest the vessel this week when it reaches the United States. These ongoing and escalating threats of arrest are making it impossible for Plaintiff K-Line or the Vessel, as an innocent stakeholder to do business. An arrest or attachment is not an absolute right, but rather serves to provide a maritime claimant with jurisdiction over a party and security for its maritime claim. *See Vitol v Primerose Shipping Co Ltd.*, 708 F 3d 527, 536-37 (4th Cir. 2013); *The Rosinco*, 2002 A M C 1157 (E.D. Wis. 2001). By this interpleader, Plaintiff K-Line, acting as charterer of the Vessel, submits to this Court's jurisdiction for the amount claimed for the delivery of fuel bunkers and seeks to provide a substitute *res* reflecting the very funds which will secure claimants maritime lien claims; the balance of equities therefore weighs in favor of enjoining arrest or attachment against the Vessel

or Plaintiff K-Line. An injunction will protect the jurisdiction of this Court and will prevent a multiplicity of actions against Plaintiff K-Line and the Vessel which disclaim any interest in the funds and are unable to determine the validity of any claimants possible maritime lien on the Vessel or other claims related to the funds at issue.

Furthermore, the proposed interpleader amount is sufficient to constitute adequate security as substitute res for any claimants' *in rem* maritime lien claims including any claim by the Defendants. The principle of substitute *res* is commonly used in maritime cases of security in various forms, including a Letter of Undertaking ("LOU"):

> Generally, once a LOU is issued, the letter becomes a complete substitute for the res and the maritime hen transfers from the vessel to the LOU. *Mantima Antares SA v The Vessel ESSICAMILLA*, 633 F. Supp 694, 695 (E D Va 1986) ("[A]s a substitute for the res, [it] ha[s] the effect of transferring the maritime lien from the vessel to the security fund,"); *see also Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 252 (2d Cir. 1994) ("In accordance with generally accepted practice, this Letter of Undertaking becomes the substitute res for the value of [the] claim.").

*Petroleos Mexicanos Refinancion v. M/T King A*, 554 F.3d 99, 104 (3d Cir. 2009). An arrest is not required in order to transfer a maritime lien claim from the vessel to substituted res; indeed, this often takes place upon the mere threat of an arrest. S*ee Astra Oil Co., Inc. v. Rover Navig., Ltd.*, 344 F. 3d 276, 278 (2d Cir. 2003) (after vessel arrest threatened, LOU issued*); see also*, *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19 (1960) (Whittaker, J., dissenting) ("This Court has from an early day consistently held that a bond, given to prevent the arrest or to procure the release of the vessel, is substituted for and stands as the vessel in the custody of the court."); *J.K. Welding Co. v. Gotham Marine Corp.*, 47 F.2d 332, 335 (S.D.N.Y. 1931). As such, it is appropriate that the interpleader funds can become a substitute *res*, especially given that Plaintiff K-Line on behalf of itself and the Vessel has sought the end result of the posting of security in a maritime action, *i.e.*, the protection of a vessel from further arrest anywhere in the world for

payment arising from the delivery of fuel bunkers.

Supplemental Admiralty Rule E provides that "the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court . . . the bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum." Supp. R. E(5)(a). Plaintiff K-Line has made an application to deposit $1,106,014.30 into the registry of this Court (the amount of the invoice addressed to the Vessel and Plaintiff K-Line for the supply of bunkers to the Vessel, plus 6% interest), thereby complying with the security requirements of Supplemental Admiralty Rule E. This total amount of $1,106,014.30 exceeds the amount sought by Defendants as payment for the fuel bunkers and should be sufficient funds for both the Interpleader and substitute security under Supplemental Admiralty Rule E.

### 2. This Interpleader Action Will Not Violate The Automatic Stay

Further, the commencement of this interpleader action does not violate the automatic stay under 11 U.S.C. § 362, as it does not seek to obtain property of the US OW Bunker Debtors. *See, e.g.*, *Price & Pierce Intern., Inc. v. Spicers Intern. Paper Sales, Inc.,* 50 B.R. 25 (S.D.N.Y. 1985) (interpleader action, which named bankrupt debtor as defendant, was not subject to automatic stay, because the bankrupt was only a nominal defendant); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985) (concluding that the automatic stay does not apply to post-bankruptcy events and that the interpleader action does not seek to "obtain" property of the estate).

The automatic stay provision is not implicated to divest a federal district court of jurisdiction over a debtor entity, where, as here, the purpose of the action is not to deprive a

debtor is its property but to determine title as among competing claimants to the property deposited with the Court. *Prudential Ins. Co. v. Moschella*, 2013 U.S. Dist. LEXIS 70609 (M.D. Fla. May 16, 2013) (Automatic stay provision of 11 U.S.C. § 362 did not divest federal district court of jurisdiction over interpleader action involving the debtor because the purpose of the interpleader statute, 28 U.S.C. § 1335, is to determine title to the *res*, and the *res* is, during an interpleader action, not property of any debtor within the meaning of the automatic stay provision.); *Neb. Ass'n of Sch. Bds., Inc. v. Strategic Governmental Solutions, Inc.*, 2009 U.S. Dist. LEXIS 5651 (D. Neb. Jan. 26, 2009) ("the bankruptcy automatic stays do not apply to these proceedings because an interpleader action is not an action to obtain possession of property of the bankruptcy estates or property from the estates, even though the debtors are among the parties claiming an interest in the interpleader funds. The funds are not considered part of the bankruptcy estates prior to a determination of title."); *Engineered Structures, Inc. v. United States Dep't of Treasury - IRS*, 2007 U.S. Dist. LEXIS 50121 (D. Or. July 3, 2007) (Section 362(a)(1) did not apply to the interpleader action because the subcontractor was one of the claimants to the funds. The interpleader action would determine whether the funds were actually part of the subcontractor's bankruptcy estate or whether they in fact belonged to some other claimant.); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12 (N.D. Cal. 1989) (The automatic stay applies to actions "against the debtor" or "to recover a claim against the debtor that arose before the commencement of" the bankruptcy case. 11 U.S.C. § 362(a)(1); the interpleader action was not "against" Ford, because Ford, although nominally a defendant, was a claimant, and Wells Fargo made no claim to the funds. The automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3). The court ruled that this section did not apply because

"the bankrupt party is one of the claimants to the res. The interpleader action will determine whether the funds are actually part of the bankrupt's estate or whether they in fact belong to the I.R.S. or some other claimant."); *National Co-op. Refinery Ass'n v. Rouse*, 60 Bankr. 857, 859-60 (D. Colo. 1986) (automatic stay triggered by one claimant's bankruptcy filing does not divest court of jurisdiction to adjudicate interpleader whose purpose was to determine title to proceeds claimed by that debtor since not yet property of the estate within the meaning of Code § 362(a)).

This Court has jurisdiction over all of the necessary parties in interest as well as over the maritime claims and in personam claims, and unlike the Bankruptcy Court, clearly has the authority to grant the full relief sought by this application. The automatic stay does not apply to these proceedings because this interpleader action is not an action to obtain possession of property of the bankruptcy estates or property from the estates, even though the Debtors are among the parties claiming an interest in the interpleader funds. The Disputed Funds cannot be considered part of the bankruptcy estates prior to a determination of title, and thus the automatic stay is not implicated in these proceedings.

### F.    CONCLUSION

WHEREFORE, Plaintiffs request that this Court enter orders pursuant to 28 U.S.C. § 2361 directing the deposit of funds into the Court's registry and restraining any claimants now or later known from instituting and prosecuting any proceeding against Plaintiffs or the Vessel *in rem*, including but not limited to the arrest or attachment of the vessel pursuant to Supplemental Admiralty Rule C or Rule B in any United States District Court, or similar action against the Vessel elsewhere in the world, based on the assertion of any claim related to the provision of bunkers, and for such other and further relief as this Court deems just and equitable.

Dated: May 29, 2015
       New York, NY

**REED SMITH LLP**

By: */s/ Andrea Pincus*
Andrea J. Pincus
Oliver Beiersdorf
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: apincus@reedsmith.com
*Attorneys for Plaintiffs Kawasaki Kisen Kaisha, Ltd. and Catalina Shipping SA.*