UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UPT POOL LTD.,<br><br>Plaintiff,<br><br>-against-<br><br>DYNAMIC OIL TRADING (SINGAPORE) PTE., LTD., O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER HOLDING NORTH AMERICA INC., HARLEY MARINE SERVICES, INC., ING BANK N.V.<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ING BANK N.V. FOR CLARIFICATION OR RECONSIDERATION OF THE COURT'S JULY 1, 2015 ORDER**<br><br>14-CV-9262 (VEC) |
| BIRCH SHIPPING LTD.,<br><br>Plaintiff,<br><br>-against-<br><br>O.W. BUNKER CHINA LTD. (HK), O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER HOLDING NORTH AMERICA INC., O.W. BUNKER & TRADING A/S, CHEMOIL LATIN AMERICA, INC.,  ING BANK N.V.,<br><br>Defendants. | 14-CV-9282 (VEC) |
| CLEARLAKE SHIPPING PTE LTD.,<br><br>Plaintiff,<br><br>-against-<br><br>O.W. BUNKER (SWITZERLAND) SA, O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER HOLDING NORTH AMERICA INC., WESTOIL MARINE SERVICES, INC., ING BANK N.V.,<br><br>Defendants. | 14-CV-9286  (VEC) |

CLEARLAKE SHIPPING PTE LTD,

                  Plaintiff,

      -against-

O.W. BUNKER (SWITZERLAND) SA, O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER HOLDING NORTH AMERICA INC., NUSTAR ENERGY SERVICES INC., ING BANK N.V.,

                  Defendants.

14-CV-9287  (VEC)

BONNY GAS TRANSPORT LIMITED, as owner of the LNG FINIMA (IMO No. 7702401),

                  Plaintiff,

      -against-

O.W. BUNKER GERMANY GMBH, NUSTAR TERMINALS MARINE SERVICES N.V., NUSTAR ENERGY SERVICES, INC., ING BANK N.V.,

                  Defendants.

14-CV-9542  (VEC)

MT CAPE BIRD TANKSCHIFFAHRTS GMBH & CO. KG, individually and on behalf of M/T CAPE BIRD (IMO No. 9260067),

                  Plaintiff,

      -against-

O.W. USA INC., O.W. NORTH AMERICA INC., HARLEY MARINE SERVICES, INC., ING BANK N.V.,

                  Defendants.

14-CV-9646  (VEC)

| | |
|---|---|
| SHV GAS SUPPLY & RISK MANAGEMENT SAS and EXMAR SHIPPING BVBA, as owner of the WAREGEM (IMO No. 9659127),<br><br>                                              Plaintiffs,<br><br>                    -against-<br><br>OW BUNKER USA, INC., OW BUNKER HOLDING NORTH AMERICA INC., OW BUNKER NORTH AMERICA INC., NUSTAR ENERGY SERVICES, INC.,  ING BANK NV,<br><br>                                              Defendants. | 14-CV-9720  (VEC) |
| HAPAG-LLOYD AKTIENGESELLSCHAFT,<br><br>                                              Plaintiff,<br><br>                    -against-<br><br>U.S. OIL TRADING L.L.C., O.W. BUNKER GERMANY GMBH, O.W. BUNKER & TRADING A/S, ING BANK N.V., and CREDIT AGRICOLE S.A.,<br><br>                                              Defendants. | 14-CV-9949 (VEC) |
| OSG SHIP MANAGEMENT, INC., and 1372 TANKER CORPORATION as owner of the M/V OVERSEAS MULAN (IMO NO. 9230880),<br><br>                                              Plaintiffs,<br><br>                    -against-<br><br>O.W. BUNKER USA INC., OW BUNKER MIDDLE EAST DMCC, CHEMOIL CORPORATION, CHEMOIL MIDDLE EAST DMCC, GPS CHEMOIL LLC FZC, and ING BANK NV,<br><br>                                              Defendants. | 14-CV-9973 (VEC) |

HAPAG-LLOYD AKTIENGESELLSCHAFT,

                            Plaintiff,

        -against-                                 14-CV-10027 (VEC)

O'ROURKE MARINE SERVICES L.P., L.L.P.,
O.W. BUNKER GERMANY GMBH, O.W.
BUNKER USA, INC., ING BANK N.V.,

                          Defendants.

---

CONTI 149 CONTI GUINEA, individually and on
behalf of M/T CONTI GUINEA (IMO No.
9391402),

                          Plaintiff,

        -against-                                 14-CV-10089 (VEC)

O.W. BUNKER PANAMA S.A., O.W. BUNKER
USA INC., CLEMENTI PARK SHIPPING CO.
PTE LTD., ING BANK N.V.,

                          Defendants.

---

NYK BULK & PROJECT CARRIERS LTD.,
individually and on behalf of M/V OCEAN
FRIEND (IMO No. 9401829),

                          Plaintiff,

        -against-                                 14-CV-10090 (VEC)

O.W. BUNKER USA INC., NUSTAR ENERGY
SERVICES, INC., HARLEY MARINE GULF,
INC., ING BANK N.V.,

                          Defendants.

| | |
|---|---|
| NIPPON KAISHA LINE LIMITED, individually and on behalf of M/V RIGEL LEADER (IMO No.9604940), | |
| Plaintiff, | |
| -against- | 14-CV-10091 (VEC) |
| O.W. BUNKER USA INC., NUSTAR ENERGY SERVICES, INC., KIRBY INLAND MARINE LP, ING BANK N.V., | |
| Defendants. | |
| HAPAG-LLOYD AKTIENGESELLSCHAFT, | |
| Plaintiff, | |
| -against- | 15-CV-00190 (VEC) |
| O.W. BUNKER NORTH AMERICA, INC., O.W. BUNKER GERMANY GMBH, O.W. BUNKER USA, INC., ING BANK N.V., | |
| Defendants. | |
| APL CO. PTE LTD and AMERICAN PRESIDENT LINES, LTD., individually and on behalf of M/V APL SALALAH (IMO No. 9462029), M/V APL ENGLAND (IMO No. 9218650), M/V APL OAKLAND (IMO No. 9332250), M/V APL SOUTHHAMPTON (IMO No. 9462017), M/V APL THAILAND (IMO No. 9077123), M/V APL CHINA (IMO No. 9074389), M/V APL EGYPT (IMO No. 9196905), M/V APL PHILIPPINES (IMO No. 9077276), and, M/V APL YANGSHAN (IMO No. 9462031), | |
| Plaintiffs, | 15-cv-00620 (VEC) |
| -against- | |
| O.W. BUNKER FAR EAST (SINGAPORE) PTE. LTD, O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., WESTOIL MARINE SERVICES, INC., ING BANK N.V., | |
| Defendants. | |

CANPOTEX SHIPPING SERVICES LIMITED, individually and on behalf of M/V GLOBAL PHOENIX (IMO No. 9565053), M/V CMB GIULIA (IMO No. 9588419), and M/V ASTON TRADER II (IMO No. 9392731),

                                          Plaintiffs,

              -against-

O.W. BUNKERS (UK) LIMITED, O.W. SUPPLY & TRADING A/S, CHEVRON MARINE PRODUCTS LLC, ING BANK N.V.,

                                          Defendants.

15-cv-1351 (VEC)

---

STAR TANKERS INC, individually and on behalf of M/V SHARON SEA (IMO No. 9316232),

                                          Plaintiff,

              -against-

O.W. BUNKER PANAMA S.A., O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER HOLDING NORTH AMERICA INC., ING BANK N.V.,

                                          Defendants.

15-cv-2090 (VEC)

---

SK SHIPPING CO., LTD., and SK B&T PTE. LTD., individually and on behalf of M/V AZURIT (IMO No. 9551703),

                                          Plaintiffs,

              -against-

NUSTAR ENERGY SERVICES, INC., O.W. BUNKER MIDDLE EAST DMCC, O.W. BUNKER USA INC., ING BANK N.V.,

                                          Defendants.

15-cv-2141 (VEC)

SIGMA TANKERS INC, individually and on behalf of M/V DUBAI ATTRACTION (IMO No. 9422536), M/V ORCHID (IMO No. 9624079),

Plaintiffs,

-against-

O.W. BUNKER PANAMA S.A., O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER HOLDING NORTH AMERICA INC., ING BANK N.V.,

Defendants.

15-cv-2733 (VEC)

BAERE MARITIME LLC, individually and on behalf of M/V YASA GOLDEN HORN (IMO No. 9334040),

Plaintiff,

-against-

O.W. BUNKER PANAMA S.A., O.W. BUNKER USA INC., O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER HOLDING NORTH AMERICA INC., ING BANK N.V.,

Defendants.

15-cv-2734 (VEC)

MSC MEDITERRANEAN SHIPPING COMPANY S.A.,

Plaintiff,

-against-

O.W. BUNKER NORTH AMERICA INC., O.W. BUNKER USA, INC., O.W. BUNKER (SWITZERLAND) S.A., ING BANK N.V., HARLEY MARINE NY, INC.

Defendants.

15-cv-3221 (VEC)

O.W. BUNKER USA INC. and O.W. BUNKER
NORTH AMERICA INC.,

                                         Plaintiffs,

                -against-                               15-cv-3471 (VEC)

COSCO PIRAEUS, I.M.O. NO. 9484364,
her engines, tackle, equipment, and furnishings, *in
rem*,

                                     Defendant.

O.W. BUNKER USA INC.,

                                       Plaintiff,

                -against-                               15-cv-3988 (VEC)

M/V BAKKEDAL *in rem,*

                                     Defendant.

KAWASAKI KISEN KAISHA, LTD and
CATALINA SHIPPING SA, as owner of the M/V
Bremen Bridge (IMO No. 9367188),

                                     Plaintiffs,

                -against-                               15-cv-4138 (VEC)

O.W. BUNKER MIDDLE EAST DMCC, O.W.
BUNKER NORTH AMERICA, INC., ING BANK
N.V., HARLEY MARINE NY, INC., and PAUL
DAVID COPLEY, IAN DAVID GREEN AND
ANTHONY VICTOR LOMAS IN THEIR
CAPACITIES AS JOINT RECEIVERS OF THE
SECURITY ASSETS,

                                     Defendants

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STANDARDS OF LAW ......................................................................................... 4

ARGUMENT ......................................................................................................... 6

I.      CLARIFICATION THAT ALL SUBSTANTIVE ISSUES REMAIN TO BE
DECIDED IS NECESSARY ........................................................................ 6

     A.      The Only Issue Presented by the Court's Prior Orders, and Briefed by the
Parties, Was Subject Matter Jurisdiction .............................................. 6

     B.      The Court's July 1 Order Appears to Address Disputed Substantive Issues
Beyond the Scope of Subject Matter Jurisdiction................................. 7

II.      IF THE COURT INTENDED TO DETERMINE SUBSTANTIVE ISSUES
BEYOND SUBJECT MATTER JURISDICTION WITHOUT THE BENEFIT
OF BRIEFING OR FACTUAL DEVELOPMENT, RECONSIDERATION IS
WARRANTED ........................................................................................... 9

     A.      A Full Record and Briefing Are Necessary to Resolve These Disputed
Issues.................................................................................................. 9

     B.      Which Claims Are Properly Made Against the Interpleaded Funds Is
Subject to Dispute ............................................................................. 10

     C.      In Each Action, The Statutory Maritime Lien Claim Is Separate from the
Contract Claims Arising Under Foreign Law ...................................... 14

III.      CLARIFICATION THAT THE RESTRAINTS ISSUED IN THESE CASES
RESTRAIN ONLY DOMESTIC PROCEEDINGS IS NECESSARY .......... 16

CONCLUSION..................................................................................................... 18

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*All Am. Tel. Co. v. AT&T, Inc.*, No. 07 Civ. 861, 2009 U.S. Dist. LEXIS 26034
(S.D.N.Y. Mar. 16, 2009) ................................................. 5

*American ORT, Inc. v. ORT Israel*, No. 07 Civ. 2332,
2009 U.S. Dist. LEXIS 10202 (S.D.N.Y. Jan. 21, 2009) .................. 4

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 126 F. Supp. 2d 328
(S.D.N.Y. 2001) ......................................................... 4

*Buckeye State Mut. Ins. Co. v. Moens*, 944 F. Supp. 2d 678 (N.D. Iowa 2013) ........... 13

*China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987) .......... 18

*Citigroup Global Mkts., Inc. v. KLCC Invs., LLC*, 2007 U.S. Dist. LEXIS 2709
(S.D.N.Y. Jan. 11, 2007) ................................................ 9

*Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121 (2d Cir. 1999) ........... 5

*Fantastic Graphics, Inc. v. Hutchinson*, No. 09 CV 2514 2010 U.S. Dist. LEXIS
10609 (E.D.N.Y. Feb. 8, 2010) ........................................... 5

*Gaines v. Sunray Oil Co.,* 539 F.2d 1136 (8th Cir. 1976) ............................. 12

*Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310 (S.D.N.Y. 2014) ................. 18

*Indianapolis Colts v. Baltimore,* 741 F.2d 954 (7th Cir. 1984),
*cert. denied,* 470 U.S. 1052, S. Ct. 1753, 84 L. Ed. 2d 817 (1985) ................. 12

*Indus. Bank of Washington v. Techmatics Tech. Inc.,* 763 F. Supp. 629
(D.D.C. 1991), *aff'd,* 955 F.2d 764 (D.C. Cir. 1992) ...................... 11-12

*Kargo, Inc. v. Pegaso PCS, S.A. DE C.V.*, No. 05 Civ. 10528,
2008 U.S. Dist. LEXIS 81888 (S.D.N.Y. Oct. 14, 2008) .................... 5-6, 9

*Kingsbury Navigation Ltd. v. Koch Shipping Inc.*, No. 11 CV 6575,
2012 U.S. Dist. LEXIS 85169 (S.D.N.Y. June 14, 2012) ................... 16

*Libby, McNeill & Libby v. City Nat'l Bank,* 592 F.2d 504 (9th Cir. 1978) ................. 12

*Martin Energy Servs., LLC v. M/V Bourbon Petrel*, No. 14-2986,
2015 U.S. Dist. LEXIS 63929 (E.D. La. May 14, 2015) ................... 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98 Civ. 1756, 2001
U.S. Dist. LEXIS 25 (S.D.N.Y. Jan. 4, 2001) ......................... 9-10, 12

*In re Millennium Seacarriers, Inc.*, 458 F.3d 92 (2d Cir. 2006) ................. 18

ii

**Page**

*Morningred v. Delta Family-Care & Survivorship Plan,*
    790 F. Supp. 2d 177 (D. Del. 2011) ............................................................. 5

*N.A. Sales Co., Inc., v. Chapman Industries Corp.*, 736 F.2d 854 (2d Cir. 1984) ......................... 5

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc.*
    *ex rel. Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Grp.*
    *(In re Hechinger Inv. Co. of Del.)*, 303 B.R. 18 (D. Del. 2003) ......................................... 6

*Prudential Ins. Co. v. Hovis,* 553 F.3d 258 (3d Cir. 2009) ......................................... 13

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9, L. Ed. 661, S. Ct. 478 (1945) ...................... 4

*Schonberger v. Serchuk*, 742 F. Supp. 108 (S.D.N.Y.1990) ......................................... 9

*Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145 (2d Cir. 2002)................... 16

*Shrader v. CSX Transportation, Inc.*, 70 F.3d 255 (2d Cir.1995) ............................. 9

*Trowbridge v. Prudential Ins. Co.,* 322 F. Supp. 190 (S.D.N.Y. 1971) ....................... 12

*United Artists Corp. v. Fields Productions, Inc.,*
    363 F. Supp. 903 (S.D.N.Y. 1973) ............................................................. 10

*Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.,*
    985 F.2d 677 (2d Cir. 1993) ............................................................. 17

### FOREIGN CASES

*Res Cogitans*, [2015] EWHC 2022 (Queen's Bench, Commercial Court)
    (July 14, 2015) ............................................................. 15

### STATUTES AND RULES

28 U.S.C. § 1335 ............................................................. 7, 10

28 U.S.C. § 2361 ............................................................. 17

S.D.N.Y. Local Civil Rule 6.3 ............................................................. 5

ING Bank N.V., as Security Agent ("ING Bank" or the "Bank"),[1] by and through its attorneys, respectfully moves for clarification or reconsideration of the Court's July 1, 2015 Order made in these cases in respect of subject matter jurisdiction (the "July 1 Order").

## PRELIMINARY STATEMENT

The Court's July 1 Order explicitly states that it is limited to determining whether the Court has subject matter jurisdiction to consider the claims brought by the various parties to the funds deposited with the Court in each of these cases. *See* July 1 Order at 25. ING Bank does not disagree with, or seek to change, the Court's conclusion that it has such jurisdiction— the language of the interpleader statute, which grants jurisdiction where parties "may claim" entitlement to a fund, has been met.

The Court's ruling, however, contains findings that appear to go well beyond those necessary to resolve the jurisdictional issue presented, including substantive issues that have not yet been fully briefed or litigated. For example, the Court appears to conclude that "any *in personam* claims that [Objecting Claimants] or others *may ultimately choose to assert* against the Vessel Owners spring from a single event" that also gives rise to *in rem* claims against the Vessels, (July 1 Order at 17 (emphasis added)). The July 1 Order addressed the narrow question of the Court's subject matter jurisdiction—it should not be read as a merits determination of the parties' respective claims. Moreover, the Court could not have determined the facts with respect to any and all future claims in circumstances where new complaints continue to be filed, certain existing complaints have not yet been answered and numerous parties, including ING Bank, have

---

[1] ING Bank is the coordinator, agent, and security agent under that certain USD 700,000,000 Multicurrency Revolving Borrowing Base Facilities Agreement, dated December 19, 2013 (the "Credit Agreement"), and related guaranty, pledge, and security agreements, including that certain English Omnibus Security Agreement, dated December 19, 2013 (the "Security Agreement," and together with the Credit Agreement and all other related guaranty, pledge, and security agreements, as amended, the "Finance Documents") made with, *inter alia*, Defendants O.W. Bunker USA, Inc. and O.W. Bunker North America Inc. (together with O.W. Bunker Holding North America Inc., the "O.W. Bunker Debtors") and certain other non-U.S. affiliates of the O.W. Bunker Debtors (collectively, the "O.W. Bunker Entities").

reserved their rights to assert additional claims in the appropriate forum as warranted by discovery and the further development of these cases.  Unless clarification is granted, such sweeping language will be used by litigants, here and in other proceedings, to seek to preclude obligations that, to date, have not been disputed.

ING Bank respectfully requests clarification that the Court's July 1 Order is not intended to preclude litigation on key substantive issues that are disputed by the parties, including ING Bank—issues that were reserved for another day and not fully briefed in the proceedings that led up to the July 1 Order.  Such issues include which claims may be maintained as interpleader claims with respect to the deposited funds, whether additional funds may ultimately need to be deposited, whether the maritime liens arising by statute are separate claims from the contractual claims among the parties and whether the contractual claims are properly before the Court at all.[2]  While the July 1 Order by its terms is limited to answering the narrow jurisdictional question posed by the Court, the findings in the July 1 Order touch on these issues and may well be read to prematurely and unfairly prejudice parties' rights.

In short, these substantive issues were not before the Court and the Court did not have the benefit of a full record or necessary fact gathering to decide these matters.  ING Bank's written and oral submissions to this Court have repeatedly reserved all rights, claims and defenses relating to the substance of all of the claims asserted, and the proper forum in which they should be litigated, for itself as Security Agent and on behalf of the applicable O.W. Bunker Entity that are Chargors (as defined in the Security Agreement).[3]  The Court's prior orders,

---

[2] Significantly, all of the contract claims to which ING Bank may be party arise from agreements that contain arbitration provisions and are governed by foreign law.

[3] Under the Security Agreement, OW Bunker Group assigned and charged to ING Bank all rights, title and interest in its third party and intercompany receivables, both current and future, including, inter alia, all Supply Receivables, New Supply Receivables, Insurance Rights, Brokerage Receivables and Intercompany Receivables (as defined in the Security Agreement) (the "Receivables").  Among other things, under clause 5.7 of the Security Agreement, the

including its orders requesting briefing on the question of subject matter jurisdiction, raised none of these issues and none of these issues needed to be resolved for the Court to reach the conclusion that it has subject matter jurisdiction to proceed with these cases.  ING Bank therefore requests clarification that these issues are not yet decided and remain to be litigated upon a full record.

        If the Court did intend to fully and finally resolve any of these issues, ING Bank respectfully requests reconsideration.  As shown below, courts in this Circuit have employed a sequential approach to interpleader cases in which interpleader claims are first identified and resolved before any separate counterclaims are considered, and the scope of a discharge injunction crafted only after resolution of all such claims.  While the Court has subject matter jurisdiction to commence this process, the Court should conclude, following development of the factual record and substantive briefing, that only the competing claims to status as a lienor under the maritime lien statute may be properly maintained as interpleader claims in the circumstances of these cases.  The Court will then be required to determine whether it has jurisdiction to consider the contractual counterclaims that have been or will be asserted, taking into account factors that may counsel against the exercise of jurisdiction, such as the applicability of foreign law, arbitration clauses or the pendency of insolvency or other proceedings in which such claims

---

Security Agent has rights to enforce the security and collect upon the Receivables, after the Security has become enforceable or in its discretion if it deems it necessary to protect the Security created by the Security Agreement. ING Bank appears herein to protect its Security in the Receivables and may assert claims of the Chargors as to the rights to collect upon those Receivables.  ING Bank has also entered into cooperation agreements for the collection of such Receivables with (1) the Danish trustees of the bankruptcy estates of OW Bunker & Trading A/S and OW Supply & Trading A/S; (2) the provisional liquidators of OW Bunker China Ltd.; (3) the administrator of OW Bunkers (UK) Ltd.; (4) the bankruptcy trustees of OW Bunker Netherlands B.V. and OW Bunker Global Trading SA; (5) the bankruptcy trustee of O.W. Bunker (Belgium) N.V.; (6) the joint and several liquidators of O.W. Bunker Far East (Singapore) Pte. Ltd.; (7) the liquidators of Dynamic Oil Trading (Singapore) Pte Ltd.; (8) the liquidators of O.W. Bunker Middle East DMCC; and (9) the administrator of OW Bunker Germany GmbH.  All the cooperation agreements remain in effect except the agreement with OW Bunkers (UK) Limited which is no longer required.

are already being litigated.  The Court should then resolve the counterclaims over which it has jurisdiction before determining the proper scope of any discharge injunction.

Finally, ING Bank further respectfully requests clarification of the effect of the July 1 Order on the scope of the temporary restraints the Court has issued to date.  Despite language in the restraints stating that they may be modified on motion, and the Court's prior comments that parties may seek to brief and argue the appropriate scope of the restraints at the appropriate time, the Court's July 1 Order may be read by some parties in these actions or non-parties to foreclose a challenge to the purported worldwide scope of certain of the injunctions and permit interference in the insolvency and other proceedings ongoing in numerous foreign jurisdictions.[4]  Notably, the plain language of 28 U.S.C. § 2361, the statute authorizing the issuance of restraining orders in aid of interpleaders, limits the applicability of such orders to proceedings in U.S. state and federal courts, and here the Vessel Owners have not sought relief under Rule 65 of the Federal Rules of Civil Procedure, which might permit entry of a broader injunction in the appropriate circumstances.  The Court should therefore clarify that the scope of the temporary restraining orders remains to be determined and, in any event, that the injunctions apply only to domestic proceedings.

## STANDARDS OF LAW

The clarification of a prior court order is within the sound discretion of the district court.  *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 126 F. Supp. 2d 328, 334 (S.D.N.Y. 2001) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15, 89 L. Ed. 661, 65 S. Ct. 478 (1945)); *see also American ORT, Inc. v. ORT Israel*, No. 07 Civ. 2332, 2009 U.S. Dist. LEXIS 10202, at

---

[4] At last count, ING Bank is aware of some 847 matters (excluding vessel arrest actions) in 18 jurisdictions involving claims arising from O.W. Bunker fuel supply transactions.  There are more than forty such interpleader or arrest proceedings pending in the United States alone.  Including the O.W. Bunker Debtors' bankruptcy proceeding now pending in the United States Bankruptcy Court for the District of Connecticut (the "U.S. Bankruptcy"), 16 different O.W. Bunker entities are in insolvency proceedings around the world, in 11 different jurisdictions.

*8-9 (S.D.N.Y. Jan. 21, 2009).  Clarification may be obtained by motion or made *sua sponte* by the Court and is appropriate where the clarification sought will provide "certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous."  *N.A. Sales Co., Inc.*, *v. Chapman Industries Corp.*, 736 F.2d 854, 858 (2d Cir. 1984).  Further, clarification is appropriate to effectuate the intent of an order.  Accordingly, if a party believes that the court's intent is unclear under the terms of an order, a court may issue an order that clarifies the earlier order.  *See, e.g.*, *Morningred v. Delta Family-Care & Survivorship Plan*, 790 F. Supp. 2d 177, 190 (D. Del. 2011).

Should reconsideration be necessary, the decision to grant or deny such a motion is also within the discretion of the district court.  *See Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999).  Specifically, Rule 6.3 of the Local Rules for the Southern District of New York provides that a motion for reconsideration must "[set] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  S.D.N.Y. Local Civil Rule 6.3.  Where a prior order prematurely resolves or disposes of claims that have not been developed in discovery, reconsideration is appropriate.  *See All Am. Tel. Co. v. AT&T, Inc.*, No. 07 Civ. 861, 2009 U.S. Dist. LEXIS 26034, at *6 (S.D.N.Y. Mar. 16, 2009) (reinstating counterclaims in light of "questions [that could not] be resolved on the pleadings and require[d] a more developed record.").  Reconsideration of a prior ruling is also appropriate where the merits of an issue have not been previously briefed or considered by the Court.  *See Fantastic Graphics, Inc. v. Hutchinson*, No. 09 CV 2514, 2010 U.S. Dist. LEXIS 10609, at *9-10 (E.D.N.Y. Feb. 8, 2010) (granting reconsideration to determine whether discovery stay was warranted on the facts, where that issue was not previously considered by magistrate judge on the merits); *see also Kargo, Inc. v. Pegaso PCS, S.A. DE C.V.*, No. 05 Civ. 10528, 2008 U.S. Dist. LEXIS 81888, at

*46-48 fn. 18 (S.D.N.Y. Oct. 14, 2008) (permitting reconsideration in respect of a dispositive issue that had not been briefed by the parties in connection with the underlying motion).  Further, a court should grant a motion for reconsideration if the court has "made a decision outside the adversarial issues presented by the parties…."  *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. ex rel. Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 303 B.R. 18, 23 (D. Del. 2003) (internal citations omitted).

## ARGUMENT

## I.   CLARIFICATION THAT ALL SUBSTANTIVE ISSUES REMAIN TO BE DECIDED IS NECESSARY

### A.   The Only Issue Presented by the Court's Prior Orders, and Briefed by the Parties, Was Subject Matter Jurisdiction

In certain of these actions, by Order dated December 19, 2014, the Court directed the parties to brief the question of "whether it is proper for the Court to permit [the Vessel Interests] to initiate interpleader actions with injunctive relief under circumstances where the vessel at issue has not yet arrived, and is not scheduled to imminently arrive, at a port in the district."  Order at ¶ 2, *SHV Gas Supply & Risk Mgmt. SAS v. OW Bunker USA, Inc.*, No. 14-cv-9720 (*"SHV Gas"*) (S.D.N.Y. Dec. 19, 2014), ECF No. 21.  In a subsequent order on February 20, 2015, the Court invited the parties to further brief the question of subject matter jurisdiction. Order at 7, *SHV Gas Supply & Risk Mgmt. SAS v. OW Bunker USA, Inc.*, No. 14-cv-9720 (S.D.N.Y. Feb. 20, 2015), ECF No. 77 ("[A]ny party in the above-captioned cases wishing to address the question of whether this Court has subject matter jurisdiction over these actions shall be permitted to file one brief . . . .").  Since that date, at least nine additional interpleader matters were filed and related before this Court, months after the briefing directed by the Court was completed on March 6, 2015.

The full scope of the claims that may be raised in each of these cases was not known as of the dates of the Court's December and February orders, nor when the parties' briefs were submitted, not only because additional cases have been filed or transferred here from other jurisdictions, but also because the jurisdictional briefing had closed by March 6, 2015, prior to ING Bank's first answer in any of these cases.  Deadlines in these matters were first adjourned, and later stayed.  *See, e.g.* Order at 4, *UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) Pte Ltd.*, No. 14-cv-9262 (S.D.N.Y. Apr. 29, 2015), ECF No. 64 ("*UPT Pool*") ("All deadlines in the above-captioned cases, including all answer, response and pre-trial discovery deadlines, shall be adjourned *sine die*.").  Neither the Court's orders nor the circumstances of the cases suggested that questions going to the merits of the claims, as opposed to the Court's jurisdiction to entertain them, would be raised or determined.[5]  The limited focus of the Court's inquiry is confirmed in the July 1 Order itself, which states that "[t]he Court's findings as stated herein are limited solely to its inquiry regarding subject matter jurisdiction and shall not be construed to address any other argument or defense raised in respect of these cases . . . ."  July 1 Order at 25.  Accordingly, the Court should clarify that the effect of the July 1 Order is limited to concluding that subject matter jurisdiction exists for the Court to continue to hear these cases, and leave to another day all other issues.

**B.      The Court's July 1 Order Appears to Address Disputed Substantive Issues Beyond the Scope of Subject Matter Jurisdiction**

Notwithstanding the limited nature of the Court's subject matter jurisdiction inquiry and the specific limitations stated in the July 1 Order, the Court's findings could be read

---

[5] Indeed, as recently as three weeks ago, at the omnibus June 19, 2015 status conference, ING Bank expressly stated its concerns with a premature discharge with respect to any claim, noting that "this is a quirky interpleader" since the Vessel Interests "undertook multiple obligations and may be exposed to multiple liabilities" that had yet to be litigated in these cases.  In response, the Court confirmed that the Vessel Interests should not obtain an early discharge given those facts, stating "I'm not inclined to let the vessels out.  I think there are just too many moving pieces that involve difficult legal issues that, near as I can tell, are going to be matters of first impression."  *See* Hearing Tr. at 75:14 – 76:1, *UPT Pool*, No. 14-cv-09262 (S.D.N.Y. June 19, 2015).

to go beyond those necessary for it to conclude that it may exercise subject matter jurisdiction over the cases at this stage. The interpleader statute, 28 U.S.C. § 1335(a)(1), requires only that the parties make claims or may make claims against a common fund – this is plainly satisfied by the Vessel Interests' invocation of the disputed statutory maritime liens, and the Court indeed finds in the July 1 Order that such disputes give rise to interpleader jurisdiction despite the absence of *in rem* jurisdiction over the vessels subject to such liens. *See* July 1 Order at 21-23 ("In the context of the Interpleader Actions, the Interpleader Actions are not actions to 'enforce' maritime liens against the Vessels, although it is certainly within the Court's admiralty jurisdiction to determine, in the context of the Interpleader Actions, whether such liens are valid. *In rem* jurisdiction over the Vessels is irrelevant in actions to declare the validity and priority of competing maritime liens brought by the vessel owner or charterer.").

The Court's statements regarding the scope of other claims that may or may not be properly made against the same funds (*id.* at 17, 19), and whether the funds are sufficient to discharge the Vessel Interests' responsibility for such claims (*id.* at 19-20), are therefore unnecessary to its conclusion on subject matter jurisdiction. Those statements may be construed to preclude ING Bank and others from litigating such issues in the context of counterclaims and defenses that ING Bank has asserted in answers, or in some cases has not yet been required to assert, including with respect to certain of the cases that had not even been commenced when the Court ordered briefing of the jurisdictional issue. Thus, clarification is necessary to prevent other parties from arguing that any resolution of such issues in favor of ING Bank and others who share its position is precluded by the doctrine of law of the case or any other similar rule of law.

8

**II.** **IF THE COURT INTENDED TO DETERMINE SUBSTANTIVE ISSUES BEYOND SUBJECT MATTER JURISDICTION WITHOUT THE BENEFIT OF BRIEFING OR FACTUAL DEVELOPMENT, RECONSIDERATION IS WARRANTED**

**A.** **A Full Record and Briefing Are Necessary to Resolve These Disputed Issues**

To the extent that the Court intended to resolve any disputed issue other than subject matter jurisdiction, and reach determinations on the issues described above, the parties' factual and legal arguments in support of positions on these issues were not before the Court and reconsideration is therefore appropriate. *See Kargo*, 2008 U.S. Dist. LEXIS 81888 at *46-48 fn. 18 (granting reconsideration where decision was based on "the Court's independent research" involving "specific legal issues [that] were not briefed by the parties"). Certain of ING Bank's arguments as to which the Court did not have the benefit of full briefing are set forth in summary herein to demonstrate that reconsideration is warranted because they "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir.1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y.1990)). ING Bank reserves the right to expand upon this analysis and to present additional defenses and arguments at the appropriate time.

This Court has previously employed a "three stage" approach to interpleader matters, in which the court (i) determines which claims are interpleader claims and which are separate claims, (ii) resolves the interpleader claims with respect to entitlement to the fund and (iii) then resolves the separate counterclaims before distributing the fund and entering a discharge order. *See Citigroup Global Mkts., Inc. v. KLCC Invs., LLC*, 2007 U.S. Dist. LEXIS 2709, at *25 (S.D.N.Y. Jan. 11, 2007) (finding that court should first resolve which claimant is entitled to the funds and then, if necessary, turn to a claimant's independent counterclaim); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98 Civ. 1756, 2001 U.S. Dist.

LEXIS 25 (S.D.N.Y. Jan. 4, 2001) (declining to dismiss stakeholder from action in light of independent claim for breach of contract if the funds were found to belong to one of the claimants).

ING Bank respectfully submits that the Court need not, nor should it, prejudge disputed issues that are central to these cases. Rather, the Court should adopt the staged approach followed in interpleaders in this Circuit and allow for the development of a complete record based on the briefing and fact gathering necessary to determine these issues on the merits.

**B. Which Claims Are Properly Made Against the Interpleaded Funds Is Subject to Dispute**

All of the interpleader cases are premised on the maritime lien granted by the U.S. Commercial Instruments and Maritime Lien Act ("CIMLA") to a supplier of necessaries to a vessel and the concomitant power of a statutory lienor to arrest the vessel in certain circumstances. As this Court's December 19, 2014 order reflects, the Court's concerns over its subject matter jurisdiction arose from the absence of certain of the vessels from this District, and therefore the absence of *in rem* jurisdiction over actions that might be brought to enforce such liens. ING Bank submits that, in each case, because there can be only one *statutory* lien under CIMLA arising out of the supply of bunkers to a vessel, the dispute as to which party is the statutory lienor in each case squarely presents adverse claims that are appropriately the subject of interpleader.[6] 28 U.S.C. § 1335. Whether the funds interpleaded by the vessel owner are

---

[6] Reconsideration on this point is appropriate because the Court considered only the Objecting Claimants' arguments regarding the separateness of the lien and contract claims, *see* July 1 Order at 16-17; ING Bank did not address that separateness because it was irrelevant to the question—focused on the competing maritime lien claims—whether Plaintiffs could "initiate interpleader actions with injunctive relief under circumstances where the vessel at issue has not yet arrived, and is not scheduled to imminently arrive, at a port in the district." ING reserved its rights in the submission that it made and specifically asked that the Court not prejudice any party "by a premature discharge of liability or [an] adjudication of the underlying merits of the parties' claims." *See* Submission of ING Bank N.V. Pursuant to the Court's December 19 and December 31, 2014 Orders at 2, *UPT Pool*, (S.D.N.Y. Jan. 14, 2015), ECF No. 27.

adequate to discharge its obligations is a question of fact to be addressed in each case on evidence not presently before the Court. *See United Artists Corp. v. Fields Prods., Inc.*, 363 F. Supp. 903, 905 (S.D.N.Y. 1973) ("[If] the stakeholder desires to dispute the amount of his obligation in whole or in part it is necessary that he deposit or give bond for the largest amount that is in dispute.").

Certain parties also seek to assert contractual claims arising from agreements in the chain leading from the order of fuel by the vessel owner through various intermediaries to the ultimate physical supplier to the vessel. Thus, in each case, there is not a single contractual claim, but numerous claims, in differing amounts. For example – and subject to further discovery – in the *Birch Shipping* matter the allegations include:

- Birch Shipping Ltd., a Chinese company based in Hong Kong and the alleged owner of the vessel M/V BIRCH 6 ordered fuel from O.W. Bunker China Ltd. ("O.W. China") to be delivered at the Port of Balboa, Panama, in the amount of $266,908.81. *See* Complaint for Interpleader at ¶16 and Ex. 2, *Birch Shipping Ltd. v. O.W. Bunker China Ltd. (HK)*, No. 14-cv-09282 ("*Birch Shipping*") (S.D.N.Y. Nov. 21, 2014), ECF No. 1.[7]

- O.W. China engaged O.W. Bunker USA, Inc. ("O.W. USA"), and O.W. USA issued an intercompany invoice to O.W. China in the amount of $262,363.61 for arranging the sale and delivery of the fuel bunkers. *See* Original Answer and Verified Claim of O.W. USA et al. at Ex. C, *Birch Shipping*, No. 14-cv-09282 (S.D.N.Y. Feb. 2, 2015), ECF No. 34.

- Subsequently, Chemoil Latin America, Inc. ("Chemoil") contracted with O.W. USA and issued an invoice to O.W. USA in the amount of $257,163.87, and commenced a separate arrest action against the M/V BIRCH 6 that is pending in this Court. *See* Compl. at Ex. 4, *Chemoil Latin Amer. Inc. v. M/V Birch 6*, No. 15-cv-00880 (S.D.N.Y. Nov. 25, 2014), ECF No. 1.

These various contractual claims do not satisfy the requirements of the interpleader statute because to satisfy the adversity requirement, "the interpleader claims must be adverse to the fund and adverse to each other." *Indus. Bank of Wash. v. Techmatics Techs., Inc.*,

---

[7] Notably, the invoice issued by O.W. China is addressed to the charterer of the vessel, non-party Wallem Commercial Services Ltd. *See id.* at Ex. 2.

763 F. Supp. 629, 634 (D.D.C. 1991), *aff'd* 955 F.2d 764 (D.C. Cir. 1992) (citing *Gaines v. Sunray Oil Co.*, 539 F.2d 1136 (8th Cir. 1976)); *Indianapolis Colts v. Baltimore*, 741 F.2d 954 (7th Cir. 1984) (finding that potentially inconsistent claims could not be resolved via interpleader because the parties were "not claimants to the same stake").  Here, the various contractual claims are not adverse to the fund because the counterparties have *in personam* liability under their respective contracts (not competing claims to a single lien on a single *res* or equivalent funds), and a party obligated separately to two parties may not require them to recover from a single fund, let alone a fund limited to the amount of its obligation to only one of them.  *Trowbridge v. Prudential Ins. Co.*, 322 F. Supp. 190, 192-193 (S.D.N.Y. 1971) ("For example, if 'A' borrowed $10 from 'B' and also bought a $10 book from 'C' on credit, he could not interplead them when they each came around to collect their $10.  He would owe more than a single obligation, and the establishment of his liability to one party would not necessarily defeat his liability to the other."); *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 509 (9th Cir. 1978) (noting that where claims against a stakeholder arise from different sources "it is clearly possible that more than a single obligation is owed, and the possibility of a double recovery justified by law is very real."). Furthermore, the Vessel Owners' personal liability on contract claims, should the ownership of the maritime liens be determined against a contract supplier, would form the basis for independent counterclaims, recovery on which would not be limited to the common fund, and jurisdiction over which would need to be determined on a case-by-case basis *after* a merits determination is made that they are not properly considered interpleader claims.  *See Merrill Lynch*, 2001 U.S. Dist. LEXIS 25, at *20 (S.D.N.Y. Jan. 4, 2001) (reserving independent counterclaims until later stage of matter following determination of ownership of interpleader funds).

However, the presence of certain claims as to which adversity is lacking does not destroy interpleader jurisdiction as a whole.  Rather, it requires that, upon determining that such claims are not appropriate for interpleader, the Court consider whether it has another basis for jurisdiction over such claims.  *See Buckeye State Mut. Ins. Co. v. Moens*, 944 F. Supp. 2d 678, 688 (N.D. Iowa 2013) ("The court's jurisdiction in a federal statutory interpleader action is not limited to the stake deposited with the court . . . . but extends to separate causes of action against the stakeholder for damages over which the court also has subject matter jurisdiction."); *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264-265 (3d Cir. 2009) ("[W]here a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court.").   The scope of all counterclaims that may be asserted in each action cannot be known now, before answers have been propounded in all of the cases, and, what's more, further factual and legal development may be necessary to determine whether the Court has a basis for jurisdiction over each such claim.

Furthermore, substantially all of the supply contracts entered into by the Vessel Interests and the relevant O.W. Bunker Entity include mandatory arbitration clauses that provide that all disputes arising in connection with the supply contracts be finally settled by arbitration in London, England in accordance with the Arbitration Act of 1996.  *See, e.g.*, Compl. at Ex. B at P.1 (O.W. Bunker Group Terms and Conditions of Sale for Marine Bunkers, Edition 2013), *UPT Pool*, (S.D.N.Y. Nov. 20, 2014), ECF No. 1 ("This Agreement shall be governed and construed in accordance with English law….[A]ll disputes arising in connection with this Agreement or any agreement relating hereto save where the Seller decides otherwise in its sole discretion shall be finally settled by arbitration in London, England in accordance with the Arbitration Act

13

1996.").  None of the Vessel Interests have to date contested their liability to the relevant O.W.

Bunker Entity supplier under their supply contracts, and as such ING Bank has not commenced

arbitration proceedings in respect of the fuel supplies that are the subject of these interpleader

cases.  However, to the extent this Court has made a final determination in its July 1 Order that

the *in rem* claims and any and all *in personam* claims, including *in personam* claims arising from

the O.W. Bunker Entity supply contracts, are implicated and proposed to be decided in the

context of these interpleader cases, reconsideration should be granted to permit the Court to

consider upon a full record applicable arbitration clauses contained in supply contracts and

whether determination of the *in personam* claims is appropriate in the context of these actions

given the parties' prior agreement on the use of arbitration to resolve their disputes, if any.

       Thus, to the extent that the Court concluded, prior to taking evidence or receiving

merits briefing, that *all* contractual claims (in addition to disputed maritime claims and statutory

liens created by CIMLA), whether brought now or in the future, are properly maintained as

interpleader claims, reconsideration is warranted, and the Court should conclude that these

questions remain to be decided upon.

**C.**    **In Each Action, The Statutory Maritime Lien Claim Is Separate from the Contract Claims Arising Under Foreign Law**

       Determining which party in each case holds the valid maritime lien under

CIMLA, as a matter of law, requires a fact-intensive inquiry because the lien arises from the

circumstances of supply, as to which contracts may provide relevant evidence but are not

conclusive.  *See, e.g.*, *Martin Energy Servs., LLC v. M/V Bourbon Petrel*, No. 14-2986, 2015

U.S. Dist. LEXIS 63929, at *20-22 (E.D. La. May 14, 2015) (finding that entitlement to a

maritime lien in an O.W. Bunker-related supply chain "is contingent on the parties'

relationships" that is "a fact-intensive question" concerning "the nature of the relationship

between each pair of entities that are involved in the transaction at issue").  The interpleader device can address these factual disputes in an orderly manner.  But deciding who is entitled to the maritime lien will not and should not extinguish independent contract obligations under foreign law separately undertaken by vessel charterers or owners that exist apart from the maritime lien claims arising under CIMLA.

As noted above, each of these actions refers to a separate supply chain, involving multiple parties, contracts and obligations, for different amounts.  Not all of those claims are adverse to one another and those contracts may vary in their terms and conditions.

In addition, there are questions that have not been briefed or litigated as to who bears the risk of loss under an English-law governed maritime contract when there is a failure to pay.  In fact, the English High Court this week dismissed an appeal brought by a vessel owner from an arbitration award in favor of ING Bank and concluded that it had no defense to payment on its contractual debt to an OWB counterparty, notwithstanding the existence of possible conflicting claims by other parties in the supply chain.  That court found that, even though "the vessel may be exposed to arrest in some jurisdictions[,]… in circumstances where the bunkers were delivered on board the vessel pursuant to an English law contract… I see no reason why the possibility of such a claim should affect the decision in this case.  Exposure to claims with the possibility of arrests is one of the risks which shipowners run."  *Res Cogitans*, [2015] EWHC 2022 (Queen's Bench, Commercial Court) (July 14, 2015) at ¶ 53.

The *Res Cogitans* decision is significant not only because it highlights the separate obligations that parties in the supply chain have undertaken, but because the Second Circuit has expressly cautioned in the maritime sphere that "'in matters of commercial law our decisions should conform to the English decisions, in the absence of some rule of public policy

which would forbid.'  Today we reaffirm our earlier decisions in recognizing the importance of

international uniformity in the laws governing the maritime trade."  *Senator Linie GMBH & Co.*

*KG v. Sunway Line, Inc.*, 291 F.3d 145, 170 (2d Cir. 2002); *see also Kingsbury Navigation Ltd.*

*v. Koch Shipping Inc.*, No. 11 CV 6575, 2012 U.S. Dist. LEXIS 85169, at *11-13 and n.3

(S.D.N.Y. June 14, 2012).[8]

       To the extent the Court clarifies that it intended to finally resolve the issue of

what claims may be asserted by the parties against the interpleader funds or otherwise, ING Bank

respectfully requests that the Court reconsider that aspect of the July 1 Order in light of these

matters which were not placed at issue by the Court's request for jurisdictional briefing.  A final

resolution of which claims are properly considered interpleader claims and which claims are in

fact counterclaims that must be resolved independent of the interpleader statute's framework for

treatment of duplicative claims against a common fund need not and should not be decided

before discovery has been conducted and before the parties have had a full and fair opportunity

to litigate the issues.  To conclude otherwise would be to prejudge certain merits issues (as

opposed to threshold jurisdictional issues) that will be before the Court in these cases.

## III.    CLARIFICATION THAT THE RESTRAINTS ISSUED IN THESE CASES RESTRAIN ONLY DOMESTIC PROCEEDINGS IS NECESSARY

       The Court has issued injunctions under 28 U.S.C. § 2361 in many of these cases,

which differ with respect to (1) the claims the Vessel Owners' contend are adverse and mutually

exclusive[9] and (2) the scope of the relief granted.[10]  While the Court cannot and should not now

---

[8] In light of the restriction set forth in Local Rule 6.3 that "No affidavits shall be filed by any party unless directed by the Court," ING Bank has not attached a copy of the English High Court's decision with this motion and memorandum of law, but can provide a copy upon the Court's request.

[9] *Compare*, *e.g.*, Complaint at ¶ 34, *SK Shipping Co. Ltd. v. NuStar Energy Services, Inc.*, No. 15-cv-2141 ("*SK Shipping*") (S.D.N.Y. March 20, 2015), ECF No. 1 ("The competing claims of the Defendants or other third parties may expose SK Bunkering to multiple liability in connection with the payment of the bunker invoice in order to extinguish *competing maritime lien claims and/or other in personam or non-maritime claims*.") (emphasis added)

16

determine the precise contours of the anti-suit injunction under 28 U.S.C. § 2361 because "any injunction that is issued only can extend to litigation involving the fund that is the subject matter of the interpleader," *Washington Electric Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 680 (2d Cir. 1993), and ING Bank believes that the question of which claims are properly limited to the interpleader fund has not yet been decided,[11] the July 1 Order should be clarified in one respect.  In dismissing certain challenges to the injunctions, the Court's July 1 Order may give the erroneous impression that any future objections with respect to the geographic scope of the injunctions were also disposed of.  *See* July 1 Order at 23-25.  The statute under which the Court's injunctions have issued provides for a restraining order against the claimants restraining them only "from instituting or prosecuting any proceeding in *any State or United States court* affecting the property, instrument or obligation involved in the interpleader action"  28 U.S.C. § 2361 (emphasis added).  The injunctions that the Court has entered cannot enjoin foreign proceedings for breach of contract or, for that matter, foreign proceedings for vessel arrests.  No party has made an application for broader relief in accordance with the procedures set forth in Federal Rule of Civil Procedure 65, which normally governs the issuance of injunctive relief, *see*

---

with Complaint at ¶ 46, *SHV Gas* (S.D.N.Y. Dec. 10, 2014), ECF No. 1 ("SHV cannot ascertain whether the Disputed Funds should be paid to OW USA, NuStar or ING in order to extinguish *all maritime liens against the Vessel . . .*") (emphasis added).

[10] *Compare*, *e.g.*, Order, *UPT Pool*, No. 14-cv-09262 (S.D.N.Y. Nov. 21, 2014), ECF No. 6 ("Plaintiff has demonstrated that a restraining order is justified to protect UPT Pool from multiple litigation against it and its vessel M/V CAPE BEALE *in rem*") *with* Order of Restraint, *SK Shipping* (S.D.N.Y. Apr. 24, 2015), ECF No. 18 ("Plaintiffs have demonstrated that a restraining order is justified to protect Plaintiffs from multiple litigation against *one or both of them for the same claims* and against the Vessel in rem for payment on the Fuel Delivery. . . ." [and that] "further actions against the *Vessel and/or Plaintiffs* shall not be brought *anywhere in the world* by any of the named defendants to secure or assert such claims") (emphasis added).  Notably, the Court's July 1 Order describes the injunctions as "generally enjoin[ing] Defendants from 'instituting or prosecuting any proceeding *in any state court, or in any United States District Court, affecting the property and res* involved in this action of interpleader . . . .'" July 1 Order at 12 (quoting Order, *SHV Gas* (S.D.N.Y. Dec. 11, 2014), ECF No. 12).

[11] To the extent the Court holds that the scope of such claims has been decided, ING Bank respectfully requests that the Court clarify whether such decision affects the scope of the injunctions and the availability of relief or modification on motion, as provided for in the injunctions.

*Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 319 (S.D.N.Y. 2014), so the injunctions

must be bounded to the limits of 28 U.S.C. § 2361 in the first instance.  The Court should

therefore clarify that references in the injunctions themselves to worldwide restraint was in error.

*See also In re Millennium Seacarriers, Inc.*, 458 F.3d 92, 98 (2d Cir. 2006) (*per curiam*) (finding

that before issuing a foreign anti-suit injunction that goes beyond the restraints properly

authorized by 28 U.S.C. § 2361 a court must address the test established in *China Trade & Dev.*

*Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987) and make findings on whether it is

appropriate in light of that test).[12]

## Conclusion

Accordingly, ING Bank respectfully requests that the Court clarify and/or

reconsider the scope and effect of its findings and conclusions in the July 1 Order and that the

Court grant such other or further relief as it deems just and proper.

Dated: New York, New York
       July 15, 2015

Respectfully submitted,

SEWARD & KISSEL LLP

By:_____s/ Bruce G. Paulsen_____
       Bruce G. Paulsen
       Brian P. Maloney
One Battery Park Plaza
New York, New York 10004
Phone: (212) 574-1200
Fax: (212) 480-8421
paulsen@sewkis.com
maloney@sewkis.com

*Attorneys for ING Bank N.V., as Security Agent*

SK 28644 0001 6700244

---

[12] On April 22, 2015, the Court invited briefing on this issue at a hearing in the *SK Shipping* matter and the briefing schedule was consensually adjourned *sine die*.  *See* Hearing Tr. at 33:13-22 in No. 15-cv-2141 (Apr. 22, 2015).  If the Court prefers, a briefing schedule could be set in order to fully address the issue, which arises in a number of these matters.